### MERCANTILE TRUST CO. v. COLUMBUS, S. & H. R. CO.

(Circuit Court, S. D. Ohio, E. D. October 24, 1898.)

1. RAILROADS—ABANDONMENT OF TRACK—SPUR TRACK.

Under Rev. St. Ohio, § 3272, providing that a railroad company shall make no change in its road or termini which will involve the abandonment of the road, either partly or completely constructed, where a company, under its resolution for building a branch line, had a discretion as to the place where it should fix the terminus, and, after building its track to certain mines, established the terminal station a mile or so from the end of such track, that part of the track beyond the station is not a part of its line of road to which the statute applies, but is simply a spur or switch track.

2. SAME—RIGHT TO ABANDON PRIVATE SWITCH TRACK.

Neither a railroad company nor its receiver, in the absence of an express contract, can be compelled to maintain and operate a switch or spur from

its line for the use of private parties in the shipment of their products at a loss, or when its operation cannot be rendered safe without a considerable expenditure of money.

In the Matter of the Intervening Petition of Hill & Hough.

Philip H. Kumler, for interveners Hill et al.

Lawrence Maxwell, Jr., for receiver.

TAFT, Circuit Judge. This is a railroad foreclosure suit. The railroad of the defendant company is being operated by S. M. Felton, receiver, under the orders of this court. The intervening petitioners are the owners of coal-mining property in Clayton township, Perry county, Ohio. They own what is called the Columbus & Eastern mine, and the Davis mines and the Wallace mines, within a mile and a half of Redfield station, on the Buckeye Branch of the Columbus, Sandusky & Hocking Railroad. They own also the mining lands upon which are the Coyle mine and the Simons mine, about two miles distant from Redfield. The petition avers and the evidence shows that the receiver has taken up the track which runs from Redfield by the Columbus & Eastern mine, and proposes to discontinue its use. The amendment to the petition avers that the receiver intends to take up the track running from Redfield to the Coyle mine and the Simons mine. The petition avers that the line from Redfield to the Columbus & Eastern mine is a part of the Buckeye Branch of the Sandusky & Hocking road, and that the receiver is forbidden, by reason of the charter obligations of the company whose road he is operating, to discontinue the use of the track. The petition admits that the line from Redfield to the Coyle mine is only a spur or switch track, and is not a part of the main line of the railroad. The receiver, in his answer, takes issue with the averment of the petition upon the question whether the track from Redfield to the Columbus & Eastern mine is part of the main road, and upon this considerable evidence has been introduced on both sides. The Columbus, Sandusky & Hocking Railroad Company is a consolidation of a number of different railroads. The part of it here in question was constructed by the Columbus & Eastern Railroad Company, which then had a line running from Columbus to and through Fultonham, in Newton township, Muskingum county, Ohio. The stockholders of the railroad, at a meeting duly called, passed the requisite resolution to construct a branch railroad, under section 3280 of the Revised Statutes of Ohio. The resolution was:

"That the company hereby determines to construct a railroad from a point on its main line at or near Fultonham, in Newton township, Muskingum county, Ohio; thence in a southerly course to a point at or near the town of Saltillo, in Perry county, Ohio; being a distance of about ten miles; all of said branch being in the counties of Muskingum and Perry, state of Ohio."

The branch was built to and through Saltillo, and then a track was laid 2½ miles beyond Saltillo, to a point near the Columbus & Eastern mine. Just when this was completed, it does not certainly appear; but it does appear that in November, 1883, the town of Redfield was platted, about one mile from Saltillo, and a little more than a mile from the Columbus & Eastern mine, on the track between them. It

further appears beyond any doubt that the town of Redfield thus laid out became the actual terminus of the Buckeye Branch. There is evidence tending to show that it was the intention to carry the branch by the Columbus & Eastern mine down to Rehoboth. Whether this be true or not, the plan was abandoned. The more probable explanation is that the Rehoboth route was not by the Columbus & Eastern mine, but to the westward of this, up a water course to the southwest. I do not regard it as very material which was the proposed course to Rehoboth, because I have not the slightest doubt that the new town of Redfield was planned to be the terminus of the road until Rehoboth should be reached. The terminus fixed in the certificate was Saltillo, and, while the expression "at or near Saltillo" gave the company some discretion to determine where the actual terminus of the branch should be, the conduct of the company from 1883 to the present day in establishing its station at Redfield, and in its establishing no station for the receipt of passengers or freight at the Columbus & Eastern mine, puts it beyond question that Redfield is the terminus of the road, and that the track built from Redfield to the mine is nothing but a spur or switch track for the accommodation of the mine.

The petitioners rely upon the language of section 3272 of the Revised Statutes of Ohio, which provides that the company may, by resolution of three-fourths of its stockholders, change the line of any part thereof, and either of the proposed termini of its road, but no change shall be made which will involve the abandonment of the road, either partly or completely constructed. Now, the contention is that the road from Redfield to the Columbus & Eastern mine was built as a part of the main branch, and that it was beyond the competency of the company, having built the line, to end this main line at Redfield, 7,000 feet back. The company took no formal action to fix the terminus of the branch at the Columbus & Eastern mine. They reserved a discretion in their certificate to fix the terminus somewhere at or near Saltillo. The question is, how did they exercise that discretion? The mere building of the track did not determine the exercise of that discretion, until they built a station which should be regarded as a terminus. They did fix a station at Redfield. The line beyond that, whatever may have been in the minds of those who built it when it was first constructed, became, by the fixing of the terminus at Redfield, nothing but a spur or switch.

Having established this fact, the question presented is whether a railroad company may discontinue switch or spur tracks built by it for the purpose of bringing business to its road, when the contract under which the spur was built contains no express obligation to continue its operation for a definite time or forever. The contract under which the spur track to the Coyle mine was built is averred in the petition, but I have not been able to find the original or a copy in the evidence. However this may be, the contract, as described in the amendment to the petition, does not contain any express stipulation by the railroad company that it will keep and operate its spur track for any definite time. This brings the case, in my judgment, in respect to both the

Columbus & Eastern mine and the Coyle mine, within the decision of the court of appeals in the case of Jones v. Newport News & M. V. Co., 31 U. S. App. 92, 13 C. C. A. 95, and 65 Fed. 736. In that case the owner of the coal tipple, which was reached by a branch spur or switch from the main line of the railway, brought suit in damages against the railway company for removing the switch. It appeared that the switch was laid by agreement, and that on the faith of the continuance of the switch the owner of the tipple had erected improvements and expended a considerable sum of money. The court held that, in the absence of an express provision in the contract as to the time during which this switch was to be maintained, it was within the discretion of the company and its directors to remove it at any time, and that an obligation assumed by the company not to remove it for a certain number of years might be invalid, as against public policy, for the reason that the railroad company had no right to bind itself by stipulation with any individual which might interfere with the usefulness of the road to the public generally. It seems to me that the case at bar and the case cited are entirely analogous, and therefore that the receiver has the right to discontinue the spur or switch, and to take up the track from either the Columbus & Eastern mine or the Coyle mine to Redfield. Should the mine owner desire to reach the railroad, he may do so by building a spur track of his own. He cannot compel the railroad company, or the receiver exercising its franchises for the time, to continue the operation of a spur or switch track at a loss, or when the operation of it cannot be rendered safe except by the expenditure of a considerable sum of money. Both these circumstances appear to the satisfaction of the court, from the evidence, as the basis for the action of the receiver. The conclusion reached renders it unnecessary to consider whether the contract under which the side tracks were built ran with the land, so as to bind the grantees of the Columbus & Eastern Railroad Company. The injunction prayed is refused, and an order may be entered to this effect.