## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

STONEGA COAL AND COKE COMPANY v. LOUISVILLE AND NASH-
VILLE RAILROAD COMPANY.

November 22, 1906.

1. CONTRACTS—*Duration—Termination at Will.*—When a contract calls
for the rendition of services and it is so incomplete that its in-
tended duration cannot be determined by a fair inference from
its terms, either party is, as a rule, entitled to terminate it at
will after reasonable notice of his intention to do so.

2. CONTRACTS—*Construction—Language Used.*—While the court, in con-
struing a contract, may consider the circumstances under which
it was made, yet when a breach of it is alleged its language
must determine to what the parties to it have bound themselves.
The question for the court is what did the parties agree to as
evidenced by their contract.

3. CONTRACTS—*Silence as to Duration—When Terminable—Case at Bar.*
Where a railroad company has contracted with a coal company
to haul its products and to deliver empty cars to it free of charge,
if the coal company will open and operate mines in a certain
coal field near its line, and will build and maintain coke ovens
in said coal field, but the contract is silent as to its duration,
the railroad company may at any time after the coal company
has complied with its part of the contract, terminate the contract
after reasonable notice of its intention to do so.

Error to a judgment of the Circuit Court of Wise county in
an action of assumpsit. Judgment for defendant. Plaintiff
assigns error.

*Affirmed.*

The opinion states the case.

*R. T. Irvine, Bullitt & Kelly* and *R. A. Ayers,* for the plain-
tiff in error.

*Helm Bruce, E. M. Fulton* and *C. T. Duncan,* for the defendant in error.

Buchanan, J., delivered the opinion of the Court.

This is an action of assumpsit, based upon a contract between the Virginia Coal and Iron Company (of which the plaintiff, the Stonega Coke and Coal Company, is the assignee) and the defendant, the Louisville and Nashville Railroad Company.

The case made by the last amended declaration, briefly stated, is that the Virginia Coal and Iron Company was the owner of very large and valuable coal mining lands in Wise county, which extended from Big Stone Gap to Norton, a distance of about twelve miles; that the Louisville and Nashville Railroad Company had extended its line of road through the said property with the hope and expectation of transporting coal and coke which it expected would be mined and manufactured on the land; that the Virginia Coal and Iron Company had purchased the property, which was wholly undeveloped, as an investment, and was entirely indifferent about commencing its speedy development; that after the railroad company had built its road it frequently importuned the coal and iron company to commence the development of its property and made divers propositions as to freight rates, etc., which it would give in case the coal and iron company did speedily develop its property, the result of which was that in the spring of 1895 the railroad company and the coal and iron company entered into a contract (whether in writing or not does not appear) which is set out in the declaration as follows: " . . . whereby the said defendant company agreed that if the said Virginia Company would commence the development of the said property by opening coal mines and building coking plants thereon (and would continue to mine coal thereon and manufacture coke therefrom, either directly or by and through its lessees or assignees, and would build and maintain, or cause to be built and maintained, a con-

necting line, or lines, of railroad up Callahan creek from the yards of the said defendant company on its main line at Appalachia, to such mines and coking plants, and would give, or cause to be given, to the defendant running rights over the same, free of charge to the defendant), it, the said defendant company, would transport free of charge to the said Virginia Company, and to any of its assignees or lessees, all such empty cars as might be needed for shipment of coal or coke from such mines or ovens over its said road or any part thereof, from its main line of railroad, to-wit: its Cumberland Valley division, to any and all coal mines and to any and all coke ovens which might be erected or constructed upon the said property on Callahan creek and the waters thereof, and would likewise transport the loaded cars of coal and coke destined to points on and over its said main line, free of charge to the said Virginia Company, and free of charge to any and all assignees or lessees of the said Virginia Company, from any and all such coal mines and coking plants which might be erected upon the said property on Callahan creek or its waters back to the main line at Appalachia."

The declaration further avers that acting upon the said agreement, the coal and iron company did, on its lands on the waters of Callahan creek (which do not exceed ten thousand acres), open coal mines, erect coke ovens and build a connecting line of road from the same to the railroad company's main line at Appalachia, a distance of about four miles; that the coal and iron company afterwards, in the year 1902, built a branch line to another coking plant also located on the waters of Callahan creek; that from the time the said agreement was made, in the year 1895, until May 1, 1902, coal was mined and coke manufactured which was hauled free of charge by the railroad company to its main line from the coal mines and coking plants of the coal and iron company, as provided for by the said agreement; that in May, 1902, the coal and iron company leased to the plaintiff, the Stonega Coke and Coal Company the prop-

erties on which the said mines and coking plants were located and assigned to it all the rights which the coal and iron company had under its contract with the railroad company; that on December 6, 1902, the railroad company notified the plaintiff that on and after February 15, 1903, it would cease to furnish empty cars or haul loaded cars between the plaintiff's mines and coking plants to Appalachia free of charge; and that after the last-named date the railroad company failed and refused to keep and perform its part of said contract.

To recover damages for this alleged breach of the contract, this action was instituted. The Circuit Court sustained a demurrer to the said amended declaration, and rendered a final judgment in favor of the railroad company. From that judgment this writ of error was awarded.

The first question to be considered is whether under the contract between the parties the defendant had the right to terminate the arrangement into which they had entered, upon reasonable notice. If it had, there can be no recovery in this case, and the demurrer was properly sustained.

The contract sued on was one for the rendition of services on the part of the railroad company. There is nothing said in the agreement as to the time during which it should continue. Does it, when considered in connection with the circumstances under which it was made, furnish the means of determining its duration? This is essential, because when a contract calls for the rendition of services, if it is so far incomplete as that the period of its intended duration cannot be determined by a fair inference from its provisions either party is ordinarily at liberty to terminate it at will on giving reasonable notice of his intention to do so. This is the statement of the general rule as made by the court in *Miss. Riv. Logging Co.* v. *Robson,* 69 Fed. Rep. 773, 779, one of the cases chiefly relied on by the plaintiff to sustain its contention, and is sustained by the authorities.

While the court, in construing a contract, may take into view the circumstances under which it was made, yet when a breach

of it is averred its language must determine to what the parties to it have bound themselves. Courts are not authorized to make contracts for them or to add any stipulation which they have not seen proper to insert. What is there in the contract, viewed in the light of the circumstances surrounding its execution, which will show its duration? Was it to continue for any definite number of years, or as long as the coal and iron company or its lessees saw proper to mine coal and manufacture coke, or until all the coal on the ten thousand acres had been mined and hauled away, or for any other definite period? The question is not what would have been a reasonable contract, nor what it may be supposed or conjectured the contracting parties contemplated or anticipated when the contract was entered into; but what did they agree to as evidenced by their contract. It may be that the coal and iron company, when it entered into the arrangement expected it to last as long as it or its assignees saw proper to mine coal and manufacture coke, or until the coal upon the lands on Callahan creek was exhausted; but if it did, it failed to give that expectation the sanction or binding force of a contract. The parties to the contract seem to have left out of consideration its duration, or at least failed to make it the subject of contract obligation.

If it were admitted, as was said by Judge Strong in *Coffin* v. *Landes,* 46 Pa. St. 426, 432, "that neither of the parties contemplated a severance of the relation formed by the contract, at the will of the other party, it does not follow that we are at liberty to treat the agreement as containing a covenant against it. That would be to make an expectation of results equivalent to a binding engagement that they should follow." That was a case where one as agent of another contracted to sell lands of the latter in consideration of one-half the net proceeds of the sales, and there was no stipulation in the contract as to its duration. It was held that the principal had the right to terminate it at will.

A case more directly in point and which is sustained by the weight of authority in this country, is that of *Jones* v. *Newport News & Miss. Valley Co.,* 65 Fed. 736, decided by the United States Circuit Court of Appeals for the Sixth Circuit. That was a case in which a railroad company had entered into a contract with one owning land adjacent to its track, that if he would build a coal tipple and a trestle therefrom to its track, it would construct a switch thereon and thereafter deliver coal to him there. In that case the plaintiff's contention was that as nothing was said in the agreement as to the time during which the switch should be maintained, the implication was it was to be maintained at all times, *i. e.,* forever. But the court, Judge Taft delivering the opinion, held that there was no such implication and affirmed the judgment of the trial court sustaining the demurrer to the declaration.

In the case of *Barney* v. *Indiana Ry. Co.* (Ind.), 61 N. E. 194, a like conclusion was reached. Barney was the owner of a race track which cost him a large sum of money. He made an agreement with the Indiana Electric Railway Company, which operated a street railway in the city near his track, by which Barney was to purchase sufficient steel rails to extend the railway company's lines out to his track, he donating $500 of the price of the rails and to be paid back the remainder of the price out of the daily receipts of the railway company. He furnished the rails and paid his $500 toward the price thereof. The company laid its track out to the race course and it and its successors operated the road for several years, when the railway company took up its rails and destroyed its track. Barney claimed that the removal of the track was a breach of the contract. The court held that it was not, and in discussing that question said: "If the company was willing to operate the road mentioned for any definite period, and appellant so desired, such a clause should have been incorporated in the contract. As the contract does not fix any definite time during which the company should operate the road, the right to determine that

question, so far as the appellant is concerned, remained with the company."

*Baldwin* v. *Kansas City, &c., Ry. Co.,* 111 Ala. 515, 20 South. 349, was an action against a railroad company in which the plaintiff claimed damages because the defendant, having contracted to put in a switch and side track at a sand pit owned by the plaintiff and to haul sand from such pit at a certain price per carload, after putting in the switch and side track as agreed upon and hauling the sand at the stipulated rate for a long time, ignored the contract, put up the freight rate and afterwards tore up the switch and side track. The court sustained a demurrer to plaintiff's complaint on the ground that the contract was not enforceable because of its uncertainty and of its being determinable at the will of either party.

See the following cases, where the principle controlling the courts in the cases cited above is recognized: *Willcox, &c., Co.* v. *Ewins,* 141 U. S. 627, 35 L. Ed. 882, 12 Sup. Ct. 94; *Marble* v. *Standard Oil Co.,* 169 Mass. 553, 48 N. E. 783; *Bates Machine Co.* v. *Bates* (Ill.), 61 N. E. 518; *Irish* v. *Dean,* 39 Wis. 562; *Kenderine, &c., Co.* v. *Plumb,* 182 Pa. St. 463; 38 Atl. 480; *Phila., &c., R. Co.* v. *River Front R. Co.,* 168 Pa. St. 357, 31 Atl. 1098; *Christenson* v. *Borax Co.,* 26 Oregon 302, 38 Pac. 127; *Lambre* v. *Stars, &c., Co.,* 118 Ala. 427, 24 South. 108; *Mercantile Trust Co.* v. *Columbus, &c., R. Co.* (C. C.), 90 Fed. 148.

The cases chiefly relied on by the plaintiff to sustain its contention on the question under consideration are: *Miss. Riv. Logging Co.* v. *Robson, supra,* and *Great Northern Ry. Co.* v. *Manchester, &c., Ry. Co.,* 5 DeGex, McNaughton & Gordon 138, 7 Eng. & Irish App. 550. The former of these cases, so far as it sustains the plaintiff's contention, is in conflict with the weight of authority in this country, and besides was based largely upon the fact that the contract in that case was a settlement of past differences between the parties, and if the contract, the court said, could be terminated at pleasure by either party, it

might prove a very inadequate consideration for the settlement of claims growing out of past transactions which had been surrendered and discharged when the contract was entered into.

The case of *Great Northern, &c., Ry. Co.* v. *Manchester, &c., Ry. Co.,* in which the decree of the lower court was affirmed by the House of Lords, does not, as it seems to us, sustain the plaintiff's contention.   The agreement in that case, which it was held was permanent and not determinable by either party upon notice, was a contract between two railway companies, by which it was provided that one of them should have running powers over the lines of the other, subject to certain regulations.   The chief consideration for the agreement was an advance of money by the company acquiring the running powers.   The grounds upon which the House of Lords based its decision were that while there was no express contract as to its duration, all the provisions of the agreement showed that it was a permanent and not a terminable agreement; that the running powers acquired by it might have been obtained through the Board of Trade under the English railway act without the consent of the other company, which powers when obtained would have been continuing and could not have been terminated; and that the agreement in no way resembled contracts of partnership or of hiring and service.

We are of opinion that there is no error in the judgment complained of and that it must be affirmed.

*Affirmed.*