# Richmond.

## J. W. WISEMAN v. O. D. DENNIS AND BENJAMIN DENNIS, PARTNERS, TRADING AS DOMINION OIL COMPANY.

March 19, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Hiram M. Smith,* for the plaintiff in error.

*Harold S. Bloomberg,* for the defendant in error.

EPES, J., delivered the opinion of the court.

O. D. Dennis and Benjamin Dennis, Jr., partners, doing business under the name of Dominion Oil Company, are engaged in the wholesale distribution of gasoline and other petroleum products in the State of Virginia. The record is silent as to whether they engage in such business outside of Virginia. During the early part of 1925, negotiations were opened by them, through their salesman, Winn, with the plaintiff in error, J. W. Wiseman, who owned and operated a gasoline filling station on east Marshall street in Richmond, Virginia, for the purpose of securing from him a contract for the purchase from Dominion Oil Company of all his gasoline and kerosene requirements for a period of five years.

In consideration of his agreeing to purchase his gasoline and kerosene exclusively from this company, Wiseman wanted it to build for him at his place of business what is known as a "drive-in" station, which would cost approximately $3,000.00. The company decided that the profit from sales made to Wiseman during a five-year period would not justify this expenditure; but offered to pay Wiseman $900.00 for such a contract, whereupon Wiseman on March 7, 1925, wrote a letter to Dominion Oil Company, which reads as follows:

"I will accept the proposition you made me under these conditions:

"I will give you a contract for five years, if you will furnish me kerosene oil and gasoline during that time as cheap as I can get it from either the Texas or Standard Oil Companies.

"Now, if at the end of six months, you do not see your way clear to build the drive-in station, and I could get another company to build it, I will refund you the amount mentioned in our verbal agreement, and our contract would be void, also if you should decide to build the drive-in station, I will make the same refund to you."

On March 14, 1925, the Dominion Oil Company paid to Wiseman the sum of $900.00, and he signed the following en-

dorsement on the bottom of said letter: "Received per agreement mentioned."

The Dominion Oil Company did not build a "drive-in" station for Wiseman, nor did he get any other company to do so.

Wiseman continued to purchase his supplies from the Dominion Oil Company for fifteen months after March, 1925. Then in June, 1926, he sold his business and the real estate on which his filling station was located, and apparently went out of the filling station business. Wiseman did not secure an obligation from the purchaser to buy from the Dominion Oil Company, and the purchaser made a contract with another wholesaler for the purchase of his gasoline and kerosene.

The maximum amount of gasoline purchased by Wiseman in any one month was 5,426 gallons. The price charged Wiseman was the same as that charged by the Dominion Oil Company to all its other customers and at all times as cheap as he could have purchased from the Standard Oil Company or the Texas Company.

. The Dominion Oil Company during this period of time did twelve per cent of the business in gasoline and kerosene done in the city of Richmond, and two per cent of that done in the State of Virginia.

On March 11, 1927, the Dominion Oil Company sued out a warrant in the civil justice court of the city of Richmond to recover from Wiseman that prorata part of the $900.00 paid by it to Wiseman that forty-five months is of sixty months, to-wit, $675.00, for the breach of said contract. In the language of the warrant it commands the high constable to summon the defendant "to answer the complaint of the plaintiffs   *   *   * upon a claim of $675.00, alleged to be due said plaintiffs from the said defendant by contract."

No point is made, however, of the insufficiency of the warrant; and the case has been proceeded in throughout as a suit for damages for the breach of said contract.

The case was removed to the Law and Equity Court, Part

Two, of the city of Richmond, and by agreement tried before the judge thereof without a jury. The court, after hearing the evidence, rendered judgment for the plaintiffs against Wiseman for $675.00 with interest from June 5, 1929, the date of the trial.

The plaintiff in error alleges that the trial court erred in so entering judgment for three reasons:

(1) There was no contract between the parties obligating Wiseman to return the whole or any part of the $900.00 he had received from the Dominion Oil Company.

(2) If it be conceded that there was an enforceable contract between the parties, the Dominion Oil Company, and not Wiseman, breached it.

(3) The contract between the parties was illegal and therefore void *ab initio* because expressly declared unlawful by sections 2 and 3 of the Clayton act (38 U. S. Stat. at L., p. 730, 731, U. S. C. A., Title 15, sections 13 and 14), and section 4, chapter 54, Acts of the General Assembly of Virginia 1919, Extra Session, section 4722 (8), Va. Code 1930.

Except in so far as it is included under the third assignment of error, the plaintiff in error has apparently abandoned his first assignment of error. It is not discussed in his brief, nor was it discussed in the oral argument of the case; and we shall not consider it further here than to say that it is not well made.

It is true that the quantity of gas which Wiseman agreed to purchase was to be measured by the necessities of his business, but the contract presupposes that Wiseman would have a business for the time agreed, and it cannot be avoided by a sale of his business within that time. *Hickey* v. *O'Brien,* 123 Mich. 611, 82 N. W. 241, 49 L. R. A. 594, 81 Am. St. Rep. 227; *Wells* v. *Alexandre,* 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; *Loudenback Fertilizer Co.* v. *Tennessee Phosphate Co.* (C. C. A. 6 Cir.), 121 Fed. 298, 61 L. R. A. 402.

The point made under the second assignment of error

is that the Dominion Oil Company did not construct for Wiseman a "drive-in" station. There was no agreement between the parties that Dominion Oil Company should construct a "drive-in" station; and the evidence does not show any act on the part of the Dominion Oil Company which constituted a breach of the agreement between the parties.

■ It does not affirmatively appear from the record before us that the contract here in question involved interstate commerce; and it is questionable, at least, whether the Clayton act has any application to the case at bar. *Quincy Oil Co.* v. *Sylvester,* 238 Mass. 95, 130 N. E. 217, 14 A. L. R. 111. But, however this may be, we are of opinion that the record here before us fails to show a state of facts which render the agreement here in question void either under the Clayton act or the said act of the General Assembly of Virginia "to prevent trusts, combinations and monopolies inimical to the public welfare."

■ The underlying purpose of the Clayton act and of the Virginia act is the protection of the public, including the ultimate consumer, against conditions resulting from monopolistic control of any commodity or from combinations or acts in restraint of trade which are unreasonable or inimical to the public welfare.

In construing the Clayton act in *Standard Fashion Company* v. *Magrane-Houston Co.,* 258 U. S. 356-7, 42 S. Ct. 360, 362, 66 L. Ed. 657-8, Mr. Justice Day says:

"Section 3 (of the Clayton act) condemns sales or agreements where the effect of such sale or contract of sale 'may' be to substantially lessen competition or tend to create monopoly. It thus deals with consequences to follow the making of the restrictive covenant limiting the right of the purchaser to deal in the goods of the seller only. But we do not think that the purpose in using the word 'may' was to prohibit the mere possibility of the consequences described. It was intended to prevent such agreements as would, under the circumstances dis-

closed, probably lessen competition or create an actual tendency to monopoly. *That it was not intended to reach every remote lessening of competition is shown in the requirement that such lessening must be substantial."*

This language of Mr. Justice Day is also applicable to the Virginia act. It may be further noted that in the Virginia act (Acts 1919, chapter 54, section 17, p. 87, Acts 1926, chapter 171, p. 314) it is specifically provided that the act "shall apply only to those trusts, combinations, and monopolies which are unreasonable or inimical to the public welfare, as hereinbefore defined, *and are prohibited and penalized under the provisions of any law of the United States, or would be prohibited and penalized under the provisions of any law of the United States if their activities extended to interstate as well as intrastate commerce."* The italicized words were not in the act of 1919, but were added by the amendment of 1926.

■ Under the facts disclosed by the evidence it cannot be said that the contract here in question would probably substantially lessen competition or create an actual tendency to a monopoly. It does tend to lessen competition in a remote degree, but this is not sufficient to render it void under either of the acts here under consideration.

*Affirmed.*