# Richmond

## HUMBLE OIL & REFINING COMPANY v. HENRY T. COX.

June 13, 1966.

Record No. 6174.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

H. Merrill Pasco (*Jack Spain, Jr.; Hunton, Williams, Gay, Powell and Gibson,* on brief), for the appellant.

Paul M. Shuford (*Wallerstein, Goode, Adamson & Dobbins,* on brief), for the appellee.

GORDON, J., delivered the opinion of the court.

Henry T. Cox brought this suit against Humble Oil & Refining Company for a declaratory judgment and accompanying equitable relief. He asked the court to void a lease agreement, dated April 13, 1964 (which we will refer to as the "Lease"), between Humble and him. The trial court decreed the Lease "rescinded, cancelled and of no further effect" because it "was procured by overreaching on the part of . . . [Humble's] agents amounting to constructive fraud and undue influence upon . . . [Cox]". We have the case on errors assigned by Humble and cross-error assigned by Cox.

The evidence shows without contradiction that Cox signed the Lease voluntarily, and that his signing was not induced by any misrepresentation made or deception practiced by Humble's agents. The evidence affords no basis, moreover, for finding that at the time Cox signed the Lease he lacked mental capacity to understand the nature of the proposed transaction or lacked mental capacity to agree to the provisions of the instrument he was signing. The trial judge erred, therefore, in cancelling the Lease on the grounds set forth in his opinion and decree. See *McGrue* v. *Brownfield,* 202 Va. 418, 117 S.E.2d 701 (1961). Findings of fact by a judge who heard the evidence *ore tenus,* though entitled to great weight, must be overturned if not supported by the evidence. *Moyer* v. *Moyer,* 206 Va. 899, 147 S.E.2d 148 (1966).

We can sustain the trial judge's decision to cancel the Lease, then, only if Cox's assignment of cross-error is well taken. A brief statement of the facts will suffice for consideration of the cross-error. These facts are uncontradicted except where otherwise noted.

The Lease, which may be characterized as a customary agreement for the leasing of a gasoline service station, is set forth on a printed form prepared by Humble, with certain typewritten and handwritten additions and certain deletions. Its salient provisions are

Cox's demise of described property to Humble and Humble's agreement to pay a specified rental. The Lease contains mutual covenants and agreements in usual form.

Cox signed and acknowledged two counterparts of the Lease on April 14, 1964.[1] His signature appears on the Lease:

> "/s/ Henry T. Cox (L.S.)
> _____
> Lessor"

Cox then handed the counterparts of the Lease to Barden, who had negotiated the Lease for Humble. Barden had no authority to bind Humble to the terms of the Lease. He took the counterparts to his office for processing and, if approved, signing by an authorized officer of Humble.

On the morning of April 15 Cox's attorney, pursuant to authorization by Cox, advised Humble that Cox was cancelling the Lease.[2] Later on April 15 the Lease was executed on behalf of Humble, and one counterpart was filed for recording in the appropriate clerk's office and the other counterpart was delivered to Cox.

The trial judge held the attorney's attempted cancellation of the Lease on the morning of April 15 legally ineffectual. As stated in the judge's opinion, he reasoned "that the lease in question, when signed and sealed by . . . [Cox] and delivered to Barden, . . . [Humble's] agent, constituted an offer of lease, . . . which being in the nature of an option, and under seal was irrevocable . . . at least, since no specific time of acceptance was therein specified, until . . . [Humble] had had a reasonable time within which to accept or reject". Because the trial judge viewed Cox's "offer" as irrevocable until Humble had been afforded a reasonable time to accept or reject it, he held that Humble's acceptance created a contract.[3] Cox assigned cross-error to this holding.

We must bear in mind that Humble admittedly was not bound by the provisions of the Lease when Cox's attorney gave notice

(1) The *testimonium* clause of the Lease reads: "IN WITNESS WHEREOF, the parties have duly executed this Agreement and affixed their respective seals thereto the day and year above written."

(2) There is conflict in the testimony respecting certain of the facts stated in this sentence of the text, but all facts stated accord with the trial judge's findings of fact. Humble concedes the evidence supports these findings.

(3) As pointed out in the first paragraph of this opinion, the trial judge rescinded the Lease for other reasons.

of cancellation on the morning of April 15. Humble was free to accept or reject the Lease or to propose modifications of its terms. The trial judge relied, and Humble now relies, upon legal rules concerning sealed instruments to preclude Cox's right to withdraw his offer on the morning of April 15.

Cox's "offer" can only be inferred from his actions in signing the Lease and handing the counterparts to Barden. The Lease contains no language indicating any intention to make an offer, and it contains no language indicating the time within which Humble could complete the agreement by executing the Lease. The Lease, after Cox signed it, purported to be merely a partially executed instrument, which would confer mutual rights and duties upon the parties when fully executed. Moreover, Cox did not agree, in writing or orally, that Humble should be afforded a reasonable time to determine whether it would execute the Lease.

We accept this premise stated by Williston and relied upon by Humble:

> "Thus where both parties sign a written agreement, the first signer necessarily proposes that the writing shall represent the bargain between the parties." 1 *Williston on Contracts* (3rd ed.) § 23, p. 52.

Acceptance of the premise that the first signer of a contract makes a proposal, however, does not lead to the conclusion advocated by Humble. Williston's statement is quoted in *Cohen* v. *New England Mut. Life Ins. Co.*, 140 F.2d 1 (7th Cir. 1944), a case cited in the trial judge's opinion in this case. The issue in *Cohen* was whether delivery in escrow was a prerequisite to the effectiveness of a contract. The contract had been signed by both parties, and the first signer was so notified before the other party attempted to withdraw his acceptance. The court held that a valid contract had been created before the attempted rescission. Both the *Cohen* opinion and Williston's statement relate to contracts signed by both parties before attempted rescission by one party. Neither supports Humble's position that the signing and sealing of a proposed bilateral contract by one party constitute an irrevocable promise.[4]

Humble relies principally upon *Watkins* v. *Robertson*, 105 Va. 269, 54 S.E. 33 (1906), to support its argument that Cox, by signing

---

(4) Other cases cited by Humble similarly do not support its position: *Fire Ass'n of Philadelphia* v. *Allis Chalmers Mfg. Co.*, 129 F.Supp. 335 (N.D. Iowa 1955); *Champion* v. *Hammer*, 178 Ore. 595, 169 P.2d 119 (1946); *Groh* v. *Calloway*, 316 Mo. 989, 292 S.W.65 (1927); *Westwitt Realty Corp.* v. *Burger*, 212 App. Div. 622, 209 N.Y.S. 486 (1925).

and sealing the Lease, made an irrevocable offer in the nature of an option. *Watkins* involved a sealed instrument containing an express offer to sell shares of stock for a specified price and an express promise to hold the offer open until a certain date. The offeree accepted the offer before that date; but the offeror refused to perform, contending the promise was not supported by consideration and was therefore unenforceable. This Court rejected the offeror's contention, holding that the sealing of the instrument conclusively imported consideration.

In *Watkins* v. *Robertson, supra,* we were dealing with an agreement to grant an option; the language of the instrument evidenced a clear intent to grant an option. As is true in option contracts generally, the parties contemplated two different contracts. By entering into the option contract, Robertson bound himself to enter into a second contract if the optionee should make timely acceptance of his continuing offer. Robertson was so bound because he had committed himself by the terms of the option contract to hold the offer open for a stated period of time. The second contract, if consummated, would impose mutual obligations—the obligation of the optionor-seller to deliver shares of stock and the obligation of the optionee-buyer to pay the agreed purchase price.

Admittedly, an option contract may be evidenced by a writing signed and sealed by the offeror only, as well as by a writing signed and sealed by both parties (the case in *Watkins*). A promise contained in an express written offer, signed and sealed and unconditionally delivered by the offeror, is a binding unilateral contract in jurisdictions that follow the common law rule respecting sealed instruments. *Restatement, Contracts,* §§ 46, 110 (1932); *Restatement (Second), Contracts,* §§ 24A, 95 (Tent. Draft No. 2, 1965).

Any proposal or offer implied by Cox's signing the Lease cannot be properly equated, however, with an option contract. Cox proposed to enter into only one contract, a bilateral contract imposing mutual rights and obligations. It is clear, moreover, that Humble's agents so understood Cox's proposal or offer.

Furthermore, we must recognize the obvious reason why Humble prepared the Lease in the form of a sealed instrument: The Lease purported to demise property for a term of more than five years, and Virginia law requires that such a demise be made in the form of a deed (Va. Code Ann. § 55-2 (Repl. vol. 1959)). Humble did not contemplate any unilateral promise that would be legally binding

because of consideration imported by a seal. Humble contemplated an exchange of promises that would of themselves furnish consideration. The intended function of the seal was to give legal effect to Cox's promise or demise when the instrument became fully effective. Humble and Cox made no bargain for a binding option, and Cox sealed no such bargain.

It is one thing to enforce a one-sided promise made with the solemnity evidenced by a seal. It is quite another thing to enforce an implied promise that was never intended by giving to a seal an effect that was never intended.

No case is cited in the briefs that disposes of the precise issue raised by Humble.[5] Text writers, however, have dealt directly with the issue. And they appear to be unanimously against Humble's position in this case.

The applicable law is stated and illustrated in *Restatement (Second), Contracts, Explanatory Notes* § 105, comment *a*, at 228 (Tent. Draft No. 2, 1965):

"*a. Exchange of promises.* Where one promise is to be exchanged for another, it is essential that each promisor manifest assent. Compare §§ 19, 52. Moreover, *it is ordinarily not contemplated that one promise shall be made without the other.* But if consideration is given or is not required *and an intention is manifested to create an option contract,* one promise may be made irrevocable, the promisee remaining free to accept or reject. See § 24A. The intention may be manifested either by the terms of the document or by the terms on which it is delivered.

"Illustrations:

"1. A signs and seals a document containing promises by him and by B and hands it to B for execution. Until B executes it, *neither party is bound.*

"2. A signs and seals a written promise to pay B $30,000 on B's completion of a building and delivers the document to C, *instructing C that the promise is to be irrevocable for 30 days* and is to be effective thereafter only if within that time B files with C specified

---

(5) *Los Angeles Rams Football Club* v. *Cannon,* 185 F.Supp. 717 (S.D. Cal. 1960); though not cited in the briefs, appears most nearly in point. The court rejected the argument that Cannon, by signing a potential bilateral contract and accepting the tender of part of the specified consideration, had made an irrevocable offer or option contract. The court held that all actions taken by the parties respecting the proposed bilateral contract were intended to be contingent upon consummation of the contract.

written promises and other documents. A is bound by an option contract." [Emphasis supplied]

The facts of this case obviously fit Illustration 1, not Illustration 2.

This is said in *1 Williston on Contracts* (3rd ed.) § 210, p. 779:

"A deed may be unilateral or bilateral in its operation. In the former case it need be executed only by the obligor and is customarily called a deed poll. If the obligations are bilateral it would normally be executed by both parties and is called an indenture. Though one part only of an indenture is executed, the deed will nevertheless be binding if that part is delivered; *but if there was no intent to deliver any part until all the parts were executed, there is no obligation until this condition is fulfilled. In any event, intent to deliver is the controlling element.*" [Emphasis supplied]

See also *1A Corbin on Contracts*, § 245 (1963); *Fuller and Braucher, Basic Contract Law*, p. 167 (1964).

For the reasons suggested by these authorities, we hold that Cox made no irrevocable promise or option contract. First, no intention was manifested to make or to seal an irrevocable promise or option contract. Cox offered only to enter into a bilateral contract, and he was legally free to withdraw his offer at any time before Humble accepted it. Secondly, Cox delivered the Lease to Humble's agent upon the condition that it be executed also on behalf of Humble. Cox was therefore legally free to withdraw his offer at any time before the condition was fulfilled.

Accordingly, neither Humble nor Cox was bound by any promise or contract on the morning of April 15, when Cox withdrew his offer through his authorized attorney. This withdrawal precluded the formation of a contract by Humble's subsequent execution of the Lease. Cox's assignment of cross-error is therefore well taken, and we affirm so much of the decree as declares the Lease to be of no force or effect.

The only remaining issue is whether the trial judge erred in his holding respecting a motor fuel sales contract, dated July 22, 1955, between Humble (Esso Standard Oil Company, when the contract was made) and Cox. Under that contract as amended (which we will refer to as the "requirements contract"), Humble agreed to sell to Cox, and Cox agreed to buy from Humble, Cox's requirements of Esso and Esso Extra during the fifteen-year period ending September 30, 1970.

On May 15, 1964, following repudiation of the proposed Lease with Humble, Cox leased the service station to Pure Oil Company,

conditioned upon his ability to deliver peaceful possession of the premises. Cox says this condition was satisfied and the lease to Pure became effective upon cancellation of the Humble Lease. Cox contends that since he has leased the station to Pure he has no further obligation under the requirements contract with Humble because he has no further requirements for gasoline.

The trial judge agreed with Cox's position. He concluded that "his [Cox's] 'Requirements' referred to in the contract [with Humble] would cease upon his lease of the premises to another". He so decreed, and Humble assigned error.

The judge's findings of fact do not bear on this question. He apparently concluded that Cox's leasing of the service station to Pure operated as a matter of law to terminate all his obligations under the requirements contract with Humble.

*Wiseman* v. *Dennis*, 156 Va. 431, 157 S.E. 716 (1931), however, is authority to the contrary. We said in that case:

> "It is true that the quantity of gas which Wiseman agreed to purchase was to be measured by the necessities of his business, but the contract presupposes that Wiseman would have a business for the time agreed, and it cannot be avoided by a sale of his business within that time. [Citing authorities]"

The authorities are divided on the question whether buyers under requirement contracts impliedly promise they will have needs or requirements during the contract period. A majority apparently follows the rule that no such promise is implied, but we adopted the contrary rule in *Wiseman* v. *Dennis, supra*. See *3 Corbin on Contracts*, § 569 (1960), setting forth the conflicting rules and citing, for the minority rule, the cases relied upon by this Court in *Wiseman* (§ 569, footnote 93).

Cox's counsel attempts to distinguish *Wiseman* on two grounds. First, he points out that the distributor in that case not only agreed to supply the operator's requirements for motor fuel, but he also paid a cash consideration to the operator. Nevertheless, Cox's requirements contract was clearly supported by legal consideration; Cox's and Humble's mutual obligations to buy and to sell all motor fuel required by Cox furnished the necessary consideration. The question posed is not whether the requirements contract is supported by legal consideration, but whether we should infer and give effect to an obligation to stay in business during the period specified in the contract.

By his second attempted distinction, counsel apparently does not

ask us to overrule *Wiseman,* but asks us to recognize an exception to the rule announced in that case. Counsel argues that the law should relieve Cox of further obligation under his requirements contract because of the changed circumstances. Cox's circumstances were quite different, counsel asserts, when he made the lease agreement with Pure in 1964, from his circumstances when he made the requirements contract with Humble in 1955.

We should examine, then, Cox's arrangements for the operation of the station when he made the contract in 1955 and the allegedly changed circumstances in 1964. In stating the relevant facts, we will borrow largely from Cox's brief.

As set forth in Cox's brief, "Cox had *never* 'operated' the service station". "[I]t had always been run by one member or other of the family". Because Cox was "a man of very limited capacity" he confined himself to menial activities about the station. He employed his son Raymond Cox to manage the station, and Raymond acted as manager until his death in 1964. Cox and his family then decided that the dilemma caused by Raymond's death should be resolved by leasing the station to an oil company. Cox began the negotiations with Humble that resulted in the abortive Lease. Then he leased the premises to Pure.

Counsel contends that Cox's abandonment of the operation of the business and his leasing of the station were necessitated by the changed circumstances effected by Raymond's death. We can understand Cox's preference that a relative manage the station. But Humble was not a party to any understanding that Raymond should manage the station. Had Cox become dissatisfied with Raymond's management before his death, he would have been free to remove Raymond and to engage another manager. Raymond's death therefore did not effect a material change of the conditions contemplated by the parties when Humble and Cox entered into the requirements contract.

Cox's counsel predicts harsh results from a strict interpretation of the rule announced in *Wiseman* v. *Dennis, supra.* He argues that if Humble's position be sound, a person would not be freed from his contractual obligation even by death, or might be forced to continue an unprofitable business until he became bankrupt. But, as already pointed out, we do not have the case of a deceased contracting party. Nor is there any evidence to indicate that continued operation of Cox's business would result in bankruptcy. In short,

we have no .occasion to pass on the theoretical issue raised by Cox. He asks us to decide whether the promise to stay in business, inferred under the rule adopted in *Wiseman* v. *Dennis, supra,* should be held to be conditioned upon a further understanding: that the promisor may cease to do business when confronted by a material change of circumstances. We decline to decide that question because no material change of circumstances has been proved in this case.

The decree appealed from will therefore be amended by eliminating the adjudication respecting the requirements contract. We express no opinion as to any remedy that may be available to Humble upon breach of that contract by Cox.

*Modified and affirmed.*