## CIRCUIT COURT OF LOUISA COUNTY

Historic Green Springs, Inc.

v.

Brandy Farm, Ltd., et al.

September 28, 1993

Case No. 4872-C

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on the Respondent's Motion to Strike the Amended Bill of Complaint and the Complainant's Motion to Strike Respondents' Amended Cross-Bill made at trial on August 6, 1993. The Court took the matters under advisement, and the parties have each submitted briefs to the court. Evidence on the relevant issues was completed on August 6.

### Factual Background

In this case, the Complainant, The Historic Green Springs, Inc. ("Green Springs") seeks an injunction enjoining the mining, entry upon, or any other activity on a parcel of land presently owned by Respondent, Brandy, Ltd. ("Brandy"). The property in question, known as Brandy Farm, is located in Louisa County and measures slightly more than 97 acres.

The original owners of the Brandy Farm, J. Murry Hill and Ruth A. Hill, entered into an agreement in 1973 with a mining company, W. R. Grace & Co. ("Grace") whereby Grace could, at its option, mine vermiculite and other micaceous ores from a 60.24 acre parcel on Brandy Farms, defined for purposes of this case as Parcel A. Pursuant to this 1973 agreement, mining on Parcel A could not begin until the Hills had

vacated the remaining 37 acres on Brandy Farm, referred to herein as Parcel B. The term of Grace's option to mine Parcel A was to expire no later than December 31, 2005. Grace paid the Hills an initial royalty of $10,000 and was required by the terms of the 1973 agreement to pay annual advance royalties of $6,000 until actual mining commenced. It appears from the terms of the contract that any royalties paid prior to actual mining were to be credited against actual royalties earned when and if mining ever began. *See* 1973 Agreement, Clause 8(C).

The sections of the contract most relevant to the issues of this case had little to do with compensation, however, but were instead intended to outline Grace's duties with respect to the maintenance and upkeep of Parcel B. Clause 12(A) provides, *inter alia*, that Grace is obliged to perform upkeep and maintenance on the buildings on Parcel B, as long as the Hills remain in residence. After the Hills vacate the premises, Clause 12(C) requires Grace to maintain both the buildings and the grounds of Parcel B, as well as to provide reasonable security for the property. In addition, Clause 12(E) provides that, once the Hills have vacated Parcel B, "no person shall use or occupy any of the buildings . . . or Parcel B without Grace's prior written permission and upon such conditions as Grace may reasonably impose."

In 1978 Brandy Farm was conveyed to Brandy, Ltd., a Virginia corporation wholly owned by the Hills's daughter, Ann Hill Granger. Mrs. Hill remained in residence on Parcel B, however, until 1984, at which time Grace was notified that its duty to maintain Brandy Farm would be triggered on October 1, 1984. At that time, market conditions for vermiculite were apparently unfavorable, and Grace had no intention to mine Parcel A in the foreseeable future. Under these circumstances, Grace was understandably reluctant to undertake the maintenance of Brandy Farm, and on October 11, 1984, Grace and Brandy agreed to modify the 1973 agreement to allow Ms. Granger to lease Brandy Farm in its entirety to third parties. Grace agreed to provide Ms. Granger with a one-year notice before it would exercise any of its rights over Brandy Farm and was thereby relieved of the obligation to maintain the farm prior to mining.

This agreement was memorialized in a letter from Jack Wolter, Grace's Vice-president for Manufacturing and Engineering, to Ms. Granger, dated October 24, 1984, and signed by Mr. Wolter. The letter refers directly to the October 11 oral agreement, which Mr. Wolter describes to Ms. Granger as "rescinding your July 1, 1984, letter re-

garding maintenance on Brandy Farm." The letter specifically informs Ms. Granger that Grace will provide her with at least one year's notice prior to exercising its rights under the 1973 agreement, in return for which "Grace would not have to be obligated to [the maintenance and upkeep] nor the burden of finding responsible tenants." The letter concludes by stating that "[t]his memo could serve as our agreement" and is signed by Mr. Wolter.

Since that term, both Grace and Ms. Granger have performed under the terms of the 1984 modification. Brandy Farm has been leased to various tenants by Ms. Granger, and Grace has continued to make advance royalty payments as they came due. Ms. Granger has never sought approval for tenants on the property, and Grace has neither reviewed the leases or attempted to control the use of parcel B.

On April 25, 1992, Ms. Granger, through Brandy, Ltd., entered into an agreement with Virginia Vermiculite, Ltd. ("VVL") for the mining of vermiculite on Parcel B. Shortly thereafter, VVL began test drilling. Grace made no attempt to interfere with VVL's activities, even though the evidence shows that it had direct knowledge that mining activities were occurring on the property.

On December 22, 1992, Grace made a gift of its land holdings in Louisa County to Green Springs, including, by assignment, its interest in mining Parcel A (the "Assignment"). The Assignment included a provision which stated: "Assignee, by acceptance of this Assignment, agrees not to mine the Premises and shall exert reasonable efforts to prevent mining on the Premises during the term of the Leasehold Estate created by the Lease Document."

On June 17, 1993, Green Springs filed a Bill of Complaint requesting that mining activities on Parcel B be enjoined, claiming as a basis for its action its rights under the 1973 agreement which had been assigned to it. The original Bill of Complaint was amended on July 23, 1993, seeking monetary damages as well. The Respondents, Brandy and Virginia Vermiculite, filed an Amended Cross-Bill seeking, *inter alia*, a declaratory judgment that the 1973 agreement has been repudiated by Grace and has thereby been rendered a nullity. Respondents also sought damages for tortious interference of contract and punitive damages.

## Discussion and Analysis

### Claim for Injunctive Relief and Damages

In order to understand this case more fully, the court must first examine carefully the nature of the 1973 agreement between Grace and the Hills. A review of the record in this case indicates to the court that this agreement, although not strictly speaking a "mining agreement," was in the nature of an option to mine vermiculite from Parcel A. The Hills offered Grace the exclusive right to mine the property in return for royalty payments throughout the contract period. Although the Hills were guaranteed at least $6,000 a year in advance royalty payments, any actual royalties they would receive would depend entirely on the amount of mining done on the property.

As counsel for Green Springs has noted, Clause 17(B) of the 1973 agreement is indeed "crucial to understanding the agreement between the parties." That clause clearly states that:

> It is understood and agreed that the decision as to whether to commence the Mining of Minerals on the Premises shall be within the sole discretion of Grace, and Grace shall have no legal obligation to do so.

By allowing Grace to determine when and if Parcel A would ever be mined, this clause gives Grace complete control over the level of compensation that the Hills would receive under the agreement. While the potential for abuse in such situations is significant, the law typically deals with it by imposing on the parties a duty of good faith in the exercise of such discretion. *See, e.g., Petra International Banking Corp. v. First American Bank*, 758 F. Supp. 1120 (E.D. Va. 1991) (Applying the requirement of good faith in sales contracts from Va. Code § 8.1–203); *Dominion Bank of Richmond v. Star Five Associates, Inc.*, 24 Va. Cir. 223, 230 (1991) (Also applying the good-faith requirement in sales contracts). As one court has noted in the context of mining leases, "where discretion is lodged in one of two parties to a contract . . . such discretion must, of course, be exercised in good faith." *Boone v. Kerr-McGee Oil Industries, Inc.*, 217 F.2d 63, 65 (10th Cir. 1954).

Virginia courts have not yet expressly held that a mining contract that gives the mining company complete discretion imposes an obligation of good faith. However, it has been held in Virginia that every contract contains within it an implied duty of good faith and fair deal-

ing. *A & E Supply Company, Inc. v. Nationwide Mutual Fire Insurance Co.*, 798 F.2d 669, 676 (4th Cir. 1986); *Pennsylvania Life Insurance Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1987). In earlier cases, Virginia courts have also held that a buyer on an approval contract had to act in good faith in determining whether to accept the goods, *Virginia-Carolina Chemical Co. v. Carter & Co.*, 99 Va. 292 (1901), and that a buyer generally had to act in good faith in order to obtain a good title to goods. *Peshine v. Shepperson*, 58 Va. (17 Gratt.) 472 (1867).

Furthermore, as the Respondents note in their brief, the implied duty of good faith is particularly important in the context of mining leases, where the landowners must necessarily leave the decision-making process to the expertise of mining companies. *See* Myers and Crofton, *The Covenant of Further Exploration*, 32 Rocky Mountain Mineral Law Institute, 1–1 (1986). Without such an implied duty of good faith to protect them, landowners would be unwilling to sign over control of their property to mining companies, and the utilization of mineral resources would be severely hampered as a result.

In light of these public policy concerns and what the court perceives to be the general principles of existing Virginia precedent, this court finds that a duty of good faith is implied in the 1973 agreement between Grace and the Hills. Thus, although Clause 12(E) indicates that Grace expressly disclaimed any legal obligation to mine Parcel A under any circumstances, such a disclaimer would have been ineffective to the extent that a refusal to mine would have constituted bad faith on Grace's part.[1]

Viewed in this light, it becomes clear that the 1992 assignment by Grace to Green Springs constituted a breach of the duty of good faith. Even though Grace was under a good-faith duty to exercise its expertise and discretion in making the decision to mine Parcel A, it assigned its rights in that property to Green Springs, a corporation with no

---

[1] Respondents have cited the court to an Ohio case, *Ionno v. Glen-Gery Corp.*, 443 N.E.2d 504 (1983), which stands for the proposition that where, as here, a mining contract provides for advance royalties to be credited against future production, there is "an implied covenant on the part of the lessees that they will work the land with ordinary diligence." *Id.* at 507. While this is an interesting proposition, there is no support for it in Virginia law. Furthermore, the court finds it unnecessary for the disposition of the case. The court therefore declines to adopt the position taken by the Ohio Supreme Court in *Ionno*.

expertise in mining whatsoever. But even if Green Springs had possessed sufficient expertise to make such a decision, it would have been unable to do so, since the Assignment expressly forbade mining on Parcel A throughout the term of the lease. By "binding itself to the mast" of the Assignment, Grace not only completely disregarded Brandy's interests and welfare, but actually worked directly to injure Brandy's interest in the agreement. As the Respondents correctly note, the Assignment "defeats the [original] object of the parties in making the contract and completely deprives Brandy of the right to receive the fruits of the contract."

As a result, Grace's bad-faith assignment amounts to a material breach of the 1973 agreement, which typically warrants rescission. *Neale v. Jones*, 232 Va. 203, 209 (1986) (Rescission would be required where a breach is "of such substantial character as to defeat the object of the parties in making the contract"). Green Springs argues in opposition that it should not be made to suffer for Grace's conduct, particularly since Grace has not even been made a party to this proceeding. This argument bears little merit.

Even if the court were to find that Green Springs was not a willing party to Grace's bad-faith breach of the 1973 agreement, Virginia law makes clear that an assignee of rights under a contract stands in the shoes of the assignor and can have no greater rights than the assignor would have had. *In re Concrete Structures, Inc.*, 23 B.R. 605 (Bankr. E.D. Va. 1982); *Fidelity & Casualty Co. of New York v. First National Exchange Bank of Virginia*, 213 Va. 531 (1973). Furthermore, Grace has no interest in defending this matter, and Green Springs's presence in this proceeding is sufficient to ensure the vigorous defense of Grace's position. The court therefore declines to allow Green Springs to benefit by Grace's absence, and if Green Springs feels that Grace was the only party who could have adequately defended its rights, it should have been joined.

Accordingly, the court finds that any rights Green Springs claims to have gained under the 1992 Assignment, both as to Parcel A and to Parcel B, were derivative of the original 1973 agreement, which has been rendered ineffective by Grace's material breach.

### The 1984 Modification

Even if the 1973 agreement had not been breached by Grace's misconduct, Green Springs would still be unable to exercise any rights

over Parcel B. As the court reads it, the 1984 modification gave Brandy the right to exercise unfettered control over the entire property, in exchange for which Brandy released Grace from the obligation to maintain and secure the property. Any rights which Green Springs now claims flow from Clause 12(E) were inextricably linked to Grace's duty to maintain the property, and since that duty no longer existed after 1984, those "rights" have also been relinquished. The course of performance of both Brandy and Grace makes it clear that this was in fact the intent of the 1984 modification, since apparently neither party acted as though Grace had any control over Brandy Farm whatsoever.[2] *See Stanley's Cafeteria, Inc. v. Abrahamson*, 226 Va. 68, 73 (1983). (A course of dealing by contracting parties that represents clear, unequivocal and convincing evidence of their mutual intent to modify the terms of the contract will bind successors in interest with knowledge of the modification). Under the terms of the modification, then, Grace/ Green Spring's duty to maintain Brandy Farm would not be reinstated until at least one year after notice has been tendered to Brandy. Since this notice has not yet been tendered, Green Springs would have had no duty to maintain the property, and the attendant "rights" it now claims under Clause 12(E) would remain dormant as well.

Accordingly, for the reasons noted, the request for injunctive relief and damages is denied, and the temporary injunction heretofore entered is dissolved.

### Cross-Bill for Declaratory Judgment and Damages

### Declaratory Judgment

Count I requests a Declaratory Judgment seeking certain declarations regarding the assignment and the option to mine agreement. The court declines to enter a Declaratory Judgment because Grace is a necessary party to the controversy and is not a party to this suit. *Erie Insurance v. Hughes*, 240 Va. 165 (1990).

---

[2] Green Springs asserts that the 1984 modification is ineffective since, as an oral agreement affecting an interest in land, it violates the Statute of Frauds. This argument is ineffective, however, since Grace memorialized the agreement in writing, which was signed by a duly authorized representative of the corporation. Since there is a writing signed by the party to be charged, there is no Statute of Frauds violation.

*Tortious Interference*

Brandy and VVL seek damages from Grace for tortious interference with the 1973 agreement as modified. They note that although Clause 17(A) expressly made the agreement terminable at the will of Grace, Green Springs should nevertheless be charged with Brandy's lost profits because it intentionally induced Grace to breach the agreement. Their rationale appears to be the conclusory assertion that "[b]ut for Green Springs's interference, Brandy would have been certain to receive production royalties from the mining of vermiculite on Parcel A."

There is no basis in the evidence for this assertion other than mere supposition and speculation. There was no guarantee that Brandy would receive production royalties from mining in the future, no more than it was certain that Grace would refrain from mining the property before 2005. The speculative nature of the parties' future profits in an at-will contract is precisely the reason why damages are typically not awarded for interference with at-will contracts, and the court sees no reason to deviate from that position in this case.

*Punitive Damages*

The claim for punitive damages is denied. Virginia law requires an award of compensatory damages as a predicate for an award of punitive damages, except in actions for libel and slander. *Gasque v. Mooers Motor Car Co.*, 227 Va. 154 (1984).