**POWER TRAVEL INTERNATIONAL, INC., on behalf of itself and all others similarly situated, Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., Continental Airlines, Inc., Delta Airlines, Inc., Jetblue Airways Corp., United Airlines, Inc. and Northwest Airlines Corp., Defendants.**

No. 02 Civ. 7434(RWS).

United States District Court,
S.D. New York.

April 17, 2003.

Goodkind Labaton Rudoff & Sucharow, New York, NY, By: Ira A. Schochet, Craig L. Briskin, Paskowitz & Associates, New York, NY, By: Larry Paskowitz, Danow McMullen & Panoff, New York, NY, By: Keven Danow, Roy L. Jacobs, New York, NY, for Plaintiffs, of counsel.

Proskauer Rose, New York, NY, By: Richard Goldstein, Carla Miller, for Defendant American Airlines, of counsel.

Morrison Cohen Singer & Weinstein, New York, NY, By: Donald Chase, for Defendants Continental Airlines and Northwest Airlines, of counsel.

Dechert Price & Rhoads, New York, NY, By: Brent Hannafan, for Defendant Delta Air Lines, Inc., of counsel.

Jennifer R. Clarke, Philadelphia, PA, for Defendant Delta Air Lines, Inc.

Mayer Brown Rowe & Maw, New York, NY, By: Ryan P. Farley, for Defendant United Air Lines, of counsel.

Mayer Brown Rowe & Maw, Washington, DC, By: Richard J. Favretto, Lily Fu Swenson, for Defendant United Air Lines, of counsel.

*OPINION*

SWEET, District Judge.

The defendants American Airlines, Inc. ("American"), Continental Airlines, Inc. ("Continental"), Delta Airlines, Inc. ("Delta"), United Airlines, Inc. ("United"), and Northwest Airlines Corp. ("Northwest") (collectively the "Defendants") have moved under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint of Power Travel International, Inc. ("Power Travel") on behalf of itself and all others similarly situated (collectively the "Class" or "Agents"). For the reasons set forth below, the motion is granted.

*Prior Proceedings*

This action was commenced in the Supreme Court of the State of New York, County of New York on August 19, 2002, and removed to this Court on September 16, 2002. The complaint followed notices from the Defendants in March 2002 discontinuing commissions on airline tickets issued by Agents on behalf of the Defendants.

The motion was heard and marked fully submitted on January 22, 2003.

*The Complaint*

The complaint is brought as a class action on behalf of thousands of travel agents throughout the United States who sold airline tickets through membership in the Airlines Reporting Corporation ("ARC") which organizes travel services for the airlines with sales of $83 billion. (Compl.¶ 1) It alleges that in March 2002, the Defendants, acting in concert, announced that they were ceasing the commission payments immediately to the Agents, although the Agents had long acted as distributors of their products and issued 75% of all airline tickets (Compl.¶ 26), had incurred special expenses at their behest in order to service the special needs of the airline consortium, and the Defendants expected the Agents to continue to adhere to the obligations of the Agent Reporting Agreement ("ARA"). (Compl.Ex. A) It alleged that the Defendants' failure to give reasonable notice before the termination of commissions has driven some Class members out of business and has severely damaged others, despite their continued compliance with all terms and requirements of the ARA. (Compl. ¶¶ 30–37; Exhibits A–G; Pls.' Opp. Mem. at 5).

It is further alleged that the ARA details the structure for coordinating the sale

of airline tickets, sold by Power Travel and the Class, in exchange for commissions that Defendants included in the price of each ticket. (Compl.¶¶ 34, 38) The Industry Agents Handbook, promulgated by ARC, (the "Handbook"), provides that commissions would be included in the ticket price and that the price would be set in a commissions sub-agreement supplementing the ARA. (ARA § XXII (Remuneration of Agents)). Furthermore, under its terms, Defendants established the Direct Reference System ("DRS"), a separate computer system for the purpose of posting commissions paid, which allowed Agents to structure their profit expectations, (Compl.¶ 39), and that the payment of commissions was part of the course of dealing between carriers and agents for decades. (Compl.¶ 27)

Compliance with the ARA and its sub-agreements requires Power Travel and the Class to provide extensive consideration to Defendants, including, *inter alia*, the posting of a surety bond ranging from $10,000 to $70,000 or equivalent letter of credit, structuring the business to meet personnel requirements, payment of administrative costs, substantial application fees and penalties, annual membership fees (akin to franchise fees), adherence to detailed accounting and file-keeping requirements, and the submission of weekly sales reports to Defendants. (ARA §§ IV (Qualifications for Retention of the Agency List), VII (Agent's Authority, General Rights and Obligations), VIII (Reports and Settlements, Defaults and Other Financial Irregularities Under ASP), IX (Additional Operating Requirements), XIV (Inspection and Retention of Agent Records), XV (Reviews of Qualification of and Breaches by Agent), XVI (Administrative and Application Fees).)

Two causes of action are alleged: Count I (Breach of Contract) for ceasing the payment of commissions without reasonable notice, and Count II (Breach of Implied Covenant of Good Faith and Fair Dealing) for terminating commissions without reasonable notice.

### The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 235–236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

### Breach of Contract Standard

Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the case," when pleading a breach of contract claim. The complaint "must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 286 (S.D.N.Y.1991).

### Reasonable Notice Is Not Required

The "reasonable notice" rule, which applies a common law reasonable notice requirement to the termination of agency relationships for an indefinite term, is inapplicable here for two reasons. First, the agency relationship between the travel agencies and the airline carriers was never terminated. Both Power Travel and De-

fendants concede the Agency Reporting Agreement ("ARA") is still in force and effect and that members of the Class are continuing to issue tickets in accordance with its terms. (Compl. ¶ 36; Defs.' Reply Mem. at 4.)

Second, the ARA has a specific termination clause. It states, "A carrier appointment may be terminated as between the Agent and any individual carrier at any time by notice in writing from one to the other," (ARA § XXIX(E).) Thus, the agreement can be terminated unilaterally by either side at any time. Furthermore, "[t]ermination shall take effect immediately upon receipt of notice." (ARA § XXIX(F).) There, therefore, is no gap or missing term to be supplied by the court with a "reasonable notice" provision.

In the cases cited by Power Travel, the courts fill in a missing term. For instance, in *Vega Invs. Corp. v. Rocky Gorge*, the court explains, "When the parties to a bargain sufficiently defined to be a contract **have not agreed with respect to a term** which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." 49 Va. Cir. 343, 345, 1999 WL 796651, 1999 Va. Cir Lexis 335, at *6–7 (July 16, 1990) (emphasis added). *See also Plaskitt v. Black Diamond Trailer Co.*, 209 Va. 460, 164 S.E.2d 645, 650 (1968) ("[W]hen a contract calls for the rendition of services, **if it is so far incomplete as that the period of its intended duration cannot be determined** by a fair inference from its provisions either party is ordinarily at liberty to terminate it at will on giving reasonable notice of its intention to do so . . ."); *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 798 (1985) (*citing Stonega Coal & Coke Co. v. Louisville & Nashville R.R. Co.*, 106 Va. 223, 55 S.E. 551, 552 (1906)) ("Virginia adheres to the common-law rule that when a contract calls for the rendition of services, **but the period of its intended duration cannot be determined** by a fair inference from its provisions, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate.").

In *Allied Equipment Co. v. Weber Engineered Prods.*, 237 F.2d 879 (4th Cir.1956), a manufacturer suddenly ended a distributorship after a disagreement with a distributor where, once again, there was no previous discussion of the duration of distributorship and no provision for its termination. Moreover, there was an indication that the manufacturer intended the relationship to last a long time. The manufacturer wrote the distributor, "I know that your thinking and ours coincides in that we are all interested in building . . . year after year. . . . I hope we may have the pleasure of many years of pleasant, profitable association." *Id.* at 880–81. The court thus decided to impose a reasonable notice provision.

Similarly, the Texas cases cited by Power Travel have a missing termination term. *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12, 15 (1957) ("[A] term of reasonable duration may be implied with the result that they [the contracts] are not void **for lack of an essential provision** and they are not terminable at will."); *Daniels v. Shop Rite Foods, Inc.*, 502 S.W.2d 894, 896 (Tex.Civ. App.1973) ("The letter agreements between the parties **did not contain any [termination] term**.").

Power Travel seeks to create a provision for a reasonable notice of termination in a contract which provides for termination at will. Certainly the equities favor the Class which has complied with the provisions of the ARA at some difficulty and expense in the expectation of continued payment of commissions, but Defendants did not grant the Agents any provision beyond termination at will with notice.

### Remuneration Term

█ The existence of a commission, set either by the carrier or by the sub-agreement, is an implied term of the contract. The ARA assumes that agents will receive commissions for their services. For instance, it states, "The Agent recognizes the proceeds of the sales, less the Agent's commissions, on these ARC traffic documents are the property of the carrier ..." (Compl.¶ 38). Section XXII specifically references remuneration, stating, "The remuneration paid to the Agent for the sale of air transportation shall be that established by the carrier, or shall be such as may be mutually agreed between the carrier and the Agent, and is not provided herein." Thus, although the exact amount of the commission is designated as outside the ARA, it is a term contemplated by and underlying the agreement. To read "is not provided therein" as referring to the very existence of any remuneration and not just to the specifics of the amount would negate the meaning of and need for the rest of the sentence. When possible, courts should give effect to the explicit words of the parties' contract. *Amchem Prods., Inc. v. Newport News Circuit Court Asbestos Cases Plaintiffs*, 264 Va. 89, 563 S.E.2d 739, 744 (2002) (holding that courts "must construe the words as written in the contract"). Thus, to argue that there is no remuneration term in the contract is to ignore § XXII. Not only does it set out a remuneration term, but it explains that it will be defined by either the unilateral action of the carrier or an outside agreement.

The question then becomes whether Defendants are in violation of the ARA's remuneration term. A commission of $0 is clearly not set by the sub-agreement, but carriers can also unilaterally determine the commission under the ARA—remuneration "shall be that established by the carrier." (ARA § XXII.) However, setting a commission of $0 means paying no commission. Defendants are thus not in good faith compliance with the contract.[1]

Virginia has recognized a covenant of good faith and fair dealing where important contractual terms are indefinite. *E.g., Vega Invs. Corp.*, 49 Va. Cir. 343, 345 ("[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); *Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn*, 144 F.Supp.2d 558, 606 (W.D.Va. 2001) ("Virginia contract law recognizes a cause of action for failure to exercise contractual discretion in good faith."); *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 462 S.E.2d 81, 84 (1995) ("We hold that the plaintiffs pled sufficient facts to support their action for breach of contract based on Selective's alleged breach of its covenant of good faith and fair dealing."). *Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 102 (1993) ("[I]t has been held in Virginia that every contract contains within it an implied duty of good faith and fair dealing."). In the *Historic Green Springs* case, the court held that although a mining contract vested one party with complete discretion, this discretion was nonetheless fundamentally limited by "an obligation of good faith." *Id.* As *Virginia Vermiculite* further stated, "[I]t is a basic principle of contract law in Virginia ... that although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual discretion in bad

---

1. This is not a case where Defendants merely arbitrarily lowered or refused or raise commissions. *But see Riggs Nat'l Bank v. Linch,* 36 F.3d 370 (4th Cir.1994) (holding lender could arbitrarily refuse to lower its prime interest rates when the deed of trust gave the lender the right to set its own prime rate). Rather, Defendants decided not to pay any commission at all.

faith, even when discretion is vested solely in that party." 144 F.Supp.2d at 606 (emphasis in original). The court explained that for a finding of bad faith, the plaintiff "is required to show that the [defendant] acted in furtherance of its own interest, with intentional disregard of the financial interest of the [plaintiff]." *Id.* (*citing State Farm Mut. Auto. Ins. Co. v. Floyd*, 235 Va. 136, 366 S.E.2d 93, 97 (1988)). This is the case here where Defendants unilaterally and suddenly stopped Power Travel's commissions "with intentional disregard" for any financial consequences for Power Travel. Power Travel alleges that Defendants' failure to provide reasonable notice before ceasing to pay commissions has driven a "substantial portion of the class" "out of business." (Pls.' Opp. Mem. at 5.)

Texas courts have likewise held that there is a duty of good faith and fair dealing when there is a "special relationship" between the parties. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *Subaru of Am. Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex.2002) (holding that the covenant of good faith and fair dealing could apply to franchise agreements). This "special relationship" arises out of the "unequal bargaining power" between the parties and the nature of their contract. *Arnold*, 725 S.W.2d at 167. Here, there is unequal bargaining power between the airlines with combined annual sales of $83 billion and the individual travel agencies. The airlines further require the agents' agreement to the omnibus contract they have drafted, and, under this contract, the airlines maintain control of the systems through which tickets are issued and commissions are paid.

Other jurisdictions have also held that contractual discretion is not "unbridled," and "the duty of good faith and fair dealing applies even when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *E.g., Wilson v. Amerado Hess Corp.,* 168 N.J. 236, 773 A.2d 1121, 1129–1130 (2001) (holding that gasoline distributor had a responsibility to set reasonable prices and could not abuse its pricing power to make it impossible for gas station dealers to compete with distributor-owned stations); *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo.1995) (The duty of good faith and fair dealing "may be relied upon" "when the manner of performance under a specific contract term allows for discretion on the part of either party."); *Boone v. Kerr–McGee Oil Indus., Inc.,* 217 F.2d 63, 65 (10th Cir.1954) ("Where discretion is lodged in one of two parties to a contract or a transportation, such discretion must, of course, be exercised in good faith."). *Wilson* explained that bad faith and abuse of discretion exists "[w]here a party alleges frustration of its expectation or fundamental purpose in entering the contract." 772 A.2d at 1130; *see also Boone,* 217 F.2d at 65 ( "[W]hat is done must be done honestly to effectuate the object and purpose the parties had in mind in providing for the exercise of such power [in the contract]."). In this way, although a contract grants a party discretion to set a contractual term, this discretion does not go so far as to enable the party to eviscerate this term and frustrate a fundamental purpose underlying the agreement.

█ In terms of damages, however, it is unclear whether Power Travel is entitled to more than nominal damages. *E.g., Town & Country Props., Inc. v. Riggins,* 249 Va. 387, 457 S.E.2d 356, 365 (1995). After all, under the Contract, Defendants can reduce commissions to a nominal fee. (ARA § XXII.) Perhaps an argument can be made for Defendants' unjust enrichment for the period in which they breach-

ed the contract, but the proper measure of damages is uncertain. Furthermore, Power Travel has provided the Court with no applicable damage theory.

### No Federal Preemption

 Power Travel's claim for breach of contract and the covenant of good faith and fair dealing is not preempted by the Airline Deregulation Act ("ADA"). The ADA provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1) (1996). In *American Airlines, Inc. v. Wolens,* the Supreme Court held that the ADA does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The ADA does not preempt "state-law-based court adjudication of routine breach-of-contract claims" as long as there "is no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 232–33, 115 S.Ct. 817. *See also Lyn–Lea Travel Corp. v. American Airlines, Inc.,* 283 F.3d 282, 287 (5th Cir. 2002).

Power Travel seeks the enforcement of an explicit remuneration term in the contract drafted by the airline carriers. The contract specifically states, "The remuneration paid to the Agent for the sale of air transportation shall be that established by the carrier." (ARA § XXII.) That this remuneration cannot be set at $0, or a negative value for that matter, is quickly apparent from a reading of the parties' good faith obligations under the contract. The covenant of good faith and fair dealing

thus functions merely as a "residual gap-filling default rule of contract law," and not as an external state law or policy. Thomas A. Diamond & Howard Foss, *Proposed Standards for Evaluating when the Covenant of Good Faith and Fair Dealing Has Been Violated: A Framework for Resolving the Mystery,* 47 Hastings L.J. 585, 586 (1996). These cannons of interpretation are essential to making sense of contracts and understanding what the parties intended in their agreement. Like fraudulent inducement in the *Lyn–Lea* case, good faith is "an elementary concept in the law of contracts," and as it is generally accepted,[2] "there is little risk of inconsistent state adjudication of contractual obligations." 283 F.3d at 290–291. The covenant of good faith and fair dealing further does not implicate the fundamental purpose behind the ADA—"To ensure that the States not undo federal deregulation [of the airline industry] with regulation of their own." *Wolens,* 513 U.S. at 222, 115 S.Ct. 817 (*quoting Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)).

The preemption cases cited by Defendants differ greatly from the instant case. In the *Wolens* case, the Illinois Consumer Fraud and Deceptive Business Practices Act under which the plaintiffs brought claims is clearly a state law external to the parties' contract. 513 U.S. at 227–28, 115 S.Ct. 817. In *Boon Ins. Agency, Inc. v. American Airlines, Inc.,* the plaintiff claimed that the contract, an economy-class ticket, explicitly authorizing a surcharge for changes made, was an illegal forfeiture and penalty under state law. 17 S.W.3d 52 (Tex.Ct.App.2000). He thus, unlike here, "[did] not look to enforce the contract as written but instead [sought] to

---

**2.** For instance, the court in *Amoco Oil Co.* remarks that "Colorado like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing." 908 P.2d at 498.

modify the terms of the contract itself by relying on state law." *Id.* at 58. In *Smith v. Comair, Inc.*, the court dismissed intentional tort claims and a contractual claim, involving defenses provided by federal law, as preempted by the ADA. 134 F.3d 254, 258 (4th Cir.1998). This is not the case here. Finally, in *Stone v. Continental Airlines, Inc.*, the court did not allow the plaintiffs to "recharacterize their tort action as a quasi-contractual claim for breach of implied warranty." 905 F.Supp. 823, 826 (D.Haw.1995). The present case does not involve a disguised tort action, but only a pure contractual claim.

### Conclusion

The motion to dismiss the complaint is granted. Power Travel is granted leave to replead within twenty (20) days.

It is so ordered.